IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| AMALIA HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:10-cv-1392 |
| | ) | |
| THE CITY OF ST. LOUIS, MISSOURI, and | ) | JURY TRIAL DEMANDED |
| | ) | |
| THE TWENTY SECOND JUDICIAL CIRCUIT, and | ) | |
| | ) | |
| MICHAEL D. DEVEREAUX, in his individual and official capacities, and | ) | |
| | ) | |
| HELEN D. HASKINS, in her individual and official capacities, and | ) | |
| | ) | |
| VIOLA NANCE, in her individual and official capacities, and | ) | |
| | ) | |
| PAULETTE HELLON, in her individual and official capacities, and | ) | |
| | ) | |
| CLAUDETTE WILLIAMS, in her Individual and official capacities, | ) | |
| | ) | |
| LINDA DESCHLER, in her individual and official capacities, and | ) | |
| | ) | |
| CONNIE CARSON, in her individual and official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

## PARTIES & JURISDICTION

1.      At all times relevant herein, Plaintiff, Amalia Harris (hereinafter "Harris"), was and is a resident of the City of St. Louis, State of Missouri and a citizen of the United States of America, who was residing within the boundaries of the Eastern Division of the Eastern District of Missouri.  At all times relevant herein, Harris was employed and paid by the City of St. Louis through the Twenty-Second Judicial Circuit as a Deputy Juror Supervisor.  Harris was employed by the Defendants from October 1, 1988 until her termination on August 18, 2009.  At the time of her termination, Harris was eighty-two years old.

2.      At all times relevant herein, Defendant City of St. Louis (hereinafter "City") is a municipal corporation organized and existing under the laws of the State of Missouri as a Charter City.  It is located within the Eastern Division of the Eastern District of Missouri.

3.      At all times relevant herein, Defendant, the Twenty Second Judicial Circuit (hereinafter referred to as "22nd Circuit"), is a circuit court organized under the laws of the State of Missouri located in the City of St. Louis within the boundaries of the Eastern Division of the Eastern District of Missouri.

4.      At all times relevant herein, Defendant Michael Devereaux (hereinafter "Devereaux"), was and is an individual employed as the Jury Supervisor for the 22nd Circuit. Devereaux was Harris's immediate supervisor at the time of and prior to her termination on August 18, 2009.  He is sued in both his individual and official capacities.

5.      At all times relevant herein, Defendant, Helen D. Haskins (hereinafter "Haskins"), was and is an individual employed as the Court Administrator for the 22nd Circuit.  She is sued in both her individual and official capacities.

6.      Defendants Viola Nance, Paulette Hellon, Claudette Williams, Linda Daschler, and

2

Connie Carson are individuals employed by the Office of the Jury Supervisor of the 22nd Circuit, who created a hostile work environment for Harris, known to Devereaux.  Upon information and belief, in creating this hostile work environment these Defendants were acting directly in the interest of their employer, who wanted to force Harris to resign/retire. They are sued in both their individual and official capacities.

7.     Plaintiff's termination by the Defendants occurred in the City of St. Louis, Missouri within the Eastern Division of the Eastern District of Missouri.

8.     This action is brought pursuant to 29 U.S.C. § 621 *et seq*., and § 213.010 *et seq*. R.S.Mo.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide claims arising under state law pursuant to 28 U.S.C. § 1367.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

9.     Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

## FACTS COMMON TO ALL COUNTS

10.     Harris began her employment with the City/22nd Circuit in 1988 and was employed there until her wrongful termination by Defendants on August 18, 2009.

11.     Harris received satisfactory performance evaluations from Devereaux until 2006, when she was assaulted at work by an African American co-worker, as set forth in more detail below.  After this assault, even though Harris' performance did not significantly change, her evaluations did.

12.     On or about February 28, 2006, Harris was assaulted by Viola Nance (hereinafter "Nance"), after another African American co-worker, Claudette Williams (hereinafter "Williams"), directed her to relieve a co-worker in the Jury Assembly Room.  Harris declined to

3

relieve the co-worker because previously she had been falsely accused of leaking information to the press while monitoring the Jury Assembly Room.  Nance then told Claudette Williams to get Harris for insubordination, even though Williams was not Harris' supervisor or even a supervisor.  For no reason, Nance then ran at Harris, grabbed her, punched her shoulders, pushed her into a machine and down onto the floor, resulting in injury to Harris, including but not limited to bruising and injury to her right shoulder.

13.     Harris saw her doctor on March 1, 2006 as a result of this assault and was not cleared by her doctor to return to work until some three weeks later due to the nature of her injuries.

14.     Nance's assault of Harris was witnessed by two other employees, Williams and Connie Carson, both of whom are also African American women.

15.     Devereaux refused to call the police to investigate Harris' assault by Nance and discouraged Harris and her daughter from doing so.  Despite Harris' injury, resulting in the filing of a workers' compensation claim, Devereaux insisted that nothing had happened to Harris. Upon information and belief, Devereaux made no incident report of this assault despite the serious nature of the incident.  Devereaux also failed and/or refused to file the workers' compensation claim related to the assault, which was filed by Harris after she retained the services of an attorney.

16.     When Devereaux learned of Nance's assault on Harris later that same day, February 28, 2006, instead of taking any action against Nance, Devereaux was seen by Harris stroking Nance on her back and telling Nance that everything was going to be "okay".

17.     As a result of the February 28, 2006 assault of Harris by Nance, Devereaux transferred Harris (instead of Nance as the aggressor) to a new position on or about March 27,

4

2006, effectively demoting Harris.  In a Memo for Record given to Harris on or about April 6, 2006, Devereaux stated, "It is obvious Ms. Harris can no longer work effectively with Ms. Nance and it is necessary that the two positions they occupy work closely together."  Significantly, Devereaux noted, "Harris' performance has been satisfactory heretofore."  Even though there was no doubt that Harris was seriously injured by Nance resulting in the need to seek medical attention and take time off, Devereaux concluded that Nance did not assault Harris.

18.     After Nance's assault on Harris and her subsequent transfer/demotion, Harris was subjected to a pattern of harassment, derision and discrimination by her co-workers because of her age, with Devereaux's knowledge and consent.  Specifically, Harris was made to endure conduct that included but was not necessarily limited to the following:

a.      Co-workers repeatedly telling her that she was, "stupid."

b.      Co-workers repeatedly yelling at her and directing profanity at her and otherwise attempting to terrorize her so that she could not effectively perform her job duties.

c.      The refusal of co-workers to assist her with her duties even though these same co-workers assisted others with their duties.

d.      Co-workers falsely accusing Harris of calling judges on the 22nd Circuit names and making false complaints against her to Devereaux.

e.      Nance passing Harris' desk and intentionally knocking items off of it.

19.     Additionally, Harris was subjected to a hostile work environment by Devereaux, which included but was not necessarily limited to the following conduct:

a.      Repeatedly being called into Devereaux's office because of the complaints of co-workers.

5

b.      A new job assignment that required her to carry mail cartons within the Civil Courts building and checks between City Hall and the Civil Courts Building, despite her shoulder injury resulting from the assault.  When Harris brought to Devereaux's attention that carrying the mail was difficult for her because of her injury from the assault, he told her to carry the mail using her other arm.  Additionally, despite two written doctor's order that Harris carry nothing over five pounds, Harris was repeatedly made to carry in excess of five pounds, further aggravating her shoulder injury.  Harris was the only person in the office required to carry mail between the Civil Courts Building and City Hall.

c.      Repeatedly making comments that Harris should retire (documented in March 2007), including but not necessarily limited to: passing Harris' desk, grinning and asking if she had thought about retiring; telling Harris that she would have to retire because she was not well; saying that Harris had worked long enough and it was time to retire; telling Harris she worked all of her life and it was time to retire; telling Harris that it was time for her to retire whenever he called Harris into his office; telling Harris when she would complain about her co-workers' hostile behavior directed towards her that it was because she was getting older and should retire; and/or telling Harris that she was working too late in life.

d.      Criticizing and negatively evaluating Harris as a pretext to justify her termination.

e.      Docking Harris' time for doctor's visits when other employees were not docked time when they went to the doctor.

f.      Giving Harris a time limit for going to and from City Hall which was not

6

imposed as to other employees of the Office of the Jury Supervisor.

20.     After Harris' assault by Nance, Devereaux began to report Harris' job performance as unsatisfactory for the first time since she began working for the 22nd Circuit. Specifically, in her 2005-2006 evaluation (issued after the assault) Devereaux characterized Harris's work as "inconsistent."  In response to this evaluation Harris noted, "In my nearly eighteen years of holding this position there was never a negative evaluation."

21.     On March 22, 2007, Haskins authorized a disciplinary action against Harris at Devereaux's request.  In this memorandum, Haskins stated that "from management's perspective" Harris' "job performance had declined since February 2006", which was when Harris was assaulted.  In her findings as part of that Disciplinary Action, Haskins stated:  "The Disciplinary Action being considered is not based upon your age, your February 28, 2006 incident with Viola Nance, or your subsequent Workers' Compensation claim."

22.     Devereaux's evaluations of Harris in 2006-2007 and 2007-2008 continued to be critical of her, which were nothing more than pretext to justify Harris' illegal termination.

23.     In his 2007-2008 evaluation of Harris, Devereaux noted "Amalia is eligible for retirement and should give it serious consideration."

24.     Additionally, and without waiver of the foregoing, as part of the Defendants effort to illegally discharge Harris, they began secretly documenting alleged deficiencies in Harris' job performance but did not tell Harris about these alleged deficiencies because they had no real interest in improving Harris' job performance but in creating a pretextual record to justify Harris' illegal discharge because of her age.

25.     Defendants' actions in failing to inform Harris of alleged deficiencies in her job performance violated the policies and procedures of the Office of the Jury Supervisor, which

required that Harris be provided notice of any deficiencies so that they could be corrected.

26.     Additionally, and without waiver of the foregoing prior to her wrongful discharge, Harris reported to Devereaux that co-workers were sleeping, reading magazines, newspapers and other private reading material, and playing on the internet when they should have been working, and therefore, were stealing time from the City and its taxpayers.  Harris was also aware that at least one co-worker, Nance, had used her position to cause the removal of her husband from the list of qualified jurors so that he would not have to serve jury duty like other qualified residents of the City of St. Louis.

27.     On August 18, 2009, Harris was discharged by Defendants for pretextual reasons. Each of the purported reasons for Harris's discharge by Defendants was nothing more than pretext to cover-up the illegal discrimination and/or retaliation against Harris, or in the alternative to cover-up the discharge of Harris in violation of the public policy of the State of Missouri for engaging in whistleblower activity.

28.     Harris filed timely complaints with the Equal Employment Opportunity Commission (hereinafter "EEOC") and the Missouri Commission on Human Rights (hereinafter "MCHR").

29.     Both the EEOC and MCHR have issued Harris "right to sue" letters.  The MCHR issued its letter on  May 5, 2010 and the EEOC issued its letter on June 29, 2010.

30.     Harris has suffered and will continue to suffer economic injury as a direct and proximate result of the acts of the Defendants as set forth herein to include lost wages and other benefits of her employment.

31.     As a direct and proximate result of the acts of the Defendants as set forth herein, Harris has suffered and will continue to suffer emotional pain, mental anguish, inconvenience,

humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

## COUNT I – ADEA AND MHRA CLAIMS  AGAINST
## ALL DEFENDANTS BASED UPON AGE DISCRIMINATION

For Count I of her cause of action against all Defendants, Plaintiff Harris states:

32.     Harris alleges and incorporates by reference as if fully set forth herein, paragraphs 1 through 31 above.

33.     Harris was and is a member of a protected class:  individuals over the age of 40 in that she was 83 years of age at the time of her wrongful discharge.

34.     Harris was qualified for the position she held, Deputy Jury Supervisor, in that she had held the position for almost twenty-one (21) years until her discharge, and she was meeting her employer's legitimate job expectations at the time of her discharge.

35.     Harris suffered an adverse employment action when she was fired by the Defendants because of her age.

36.     Additionally, but without waiver of the foregoing, Harris was discriminated against by Defendants when they documented alleged deficiencies in Harris' performance but did not provide this information to Harris to prevent her from improving on these alleged deficiencies so that she could keep her position with the 22nd Circuit.

37.     Upon information and belief, Harris' replacement was substantially younger than she was at the time of her discharge.

38.     Any purported reasons presented by Defendants for Harris's discharge are nothing more than pretext to cover-up Harris's illegal discharge on the basis of her age.

39.     The actions, policies and practices complained of herein were in violation of Plaintiffs' rights secured by 29 U.S.C. § 621 *et seq.* and R.S.Mo. §213.010 *et seq.*

40.     As a direct and proximate result of her wrongful discharge, Harris has suffered

and will continue to suffer economic injury to include lost wages and benefits of her employment.

41.    As a direct and proximate result of her wrongful discharge, Harris has suffered and will continue to suffer emotional pain, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

42.    The conduct of the Defendants as set forth herein was wanton, willful, and showed a reckless indifference to Harris' federal statutory rights as set forth above, and therefore, an award of punitive damages is warranted and necessary to punish Defendants and to deter them and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff Harris prays this Court enter judgment in her favor and against the Defendants and thereafter:

A.    Enjoin Defendants' officers, agents, representatives and employees, or others acting in concert with them or under their direction and control from engaging in the policies and practices complained of herein, to wit, discriminating against employees on the basis of their age, and thereafter, make Harris whole by ordering her reinstatement with retroactive back pay, seniority, and all other privileges and benefits of her employment;

B.    Order Defendants to make Harris whole for any and all loses or damages she has suffered including lost wages and other benefits of employment;

C.    Award damages to Harris for her emotional injuries, including but not limited to emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation;

D.    Award Harris punitive damages against the Defendants in their individual capacities in such sum as this court believes will serve to punish them and to deter them and

others from like conduct;

E.      Award Harris the costs of this action, together with her reasonable costs and attorneys' fees; and

F.      Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

### COUNT II – RETALIATION CLAIM AGAINST ALL DEFENDANTS UNDER THE ADEA AND MHRA

For Count II of her cause of action against all Defendants, Plaintiff Harris states:

43.      Harris alleges and incorporates by reference as if fully set forth herein, paragraphs 1 through 42 above.

44.      Harris engaged in protected activity when she complained to her supervisor, Devereaux, about and opposed the illegal age discrimination she was experiencing through her attorneys on or about June 16, 2009.  Additionally, Harris had engaged in protected activity dating back to March 2007 when she complained about and opposed Devereaux's age-related comments about her needing to retire.

45.      Harris was subjected to an adverse employment action as a result of her protected activity when she was terminated by the Defendants on August 18, 2009.

46.      Harris was subjected to an adverse employment action when Defendants began to secretly document alleged deficiencies in her performance but did not provide this information to Harris because the Defendants did not want Harris to improve her job performance.

47.      Harris was subjected to an adverse employment action when she was made to suffer a hostile work environment as set forth in paragraphs 18 and 19 above, which are incorporated by reference herein.

48.      A causal connection/nexus exists between Harris' protected activity and the

11

adverse employment actions set forth in paragraphs 45-47 herein.

49.     The actions, policies and practices complained of herein were in violation of Plaintiffs' rights secured by 29 U.S.C. § 621 *et seq.* and R.S.Mo. §213.010 *et seq.*

50.     As a direct and proximate result of her wrongful discharge, Harris has suffered and will continue to suffer economic injury to include lost wages and benefits of her employment.

51.     As a direct and proximate result of her wrongful discharge, Harris has suffered and will continue to suffer emotional pain, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

52.     The conduct of the Defendants as set forth herein was wanton, willful, and showed a reckless indifference to Harris' federal statutory rights as set forth above, and therefore, an award of punitive damages is warranted and necessary to punish Defendants and to deter them and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff Harris prays this Court enter judgment in her favor and against the Defendants and thereafter:

A.     Enjoin Defendants' officers, agents, representatives and employees, or others acting in concert with them or under their direction and control from engaging in the policies and practices complained of herein, to wit, retaliating against employees when they engage in protected activity, and thereafter, make Harris whole by ordering her reinstatement with retroactive back pay, seniority, and all other privileges and benefits of her employment;

B.     Order Defendants to make Harris whole for any and all loses or damages she has suffered including lost wages and other benefits of employment;

C.     Award damages to Harris for her emotional injuries, including but not limited to

emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss

of enjoyment of life, stress, and loss of reputation;

     D.     Award Harris punitive damages against the Defendants in their individual

capacities in such sum as this court believes will serve to punish them and to deter them and

others from like conduct;

     E.     Award Harris the costs of this action, together with her reasonable costs and

attorneys' fees; and

     F.     Grant such other and additional relief as may appear to the Court to be equitable

and just under the circumstances.

<u>COUNT III – HOSTILE WORK ENVIRONMENT CLAIM<br>UNDER THE ADEA AND MHRA</u>

For Count III of her cause of action against all Defendants, Plaintiff Harris states:

53.     Harris alleges and incorporates by reference as if fully set forth herein, paragraphs

1 through 52 above.

54.     Harris is a member of a protected class because of her age.

55.     Harris suffered unwelcome harassment because of her age after she was assaulted

by Nance as set forth in paragraphs 18 and 19 above, which are incorporated by reference as if

fully set forth herein.

56.     When Harris complained about her mistreatment by co-workers to Devereaux, he

would not address Harris' complaints but would tell Harris that she was too old and she should

retire.

57.     A causal connection/nexus exists between the harassment Harris suffered and her

age.

58.     The harassment Harris suffered affected a term, condition, or privilege of Harris'

employment.

59.     Alternatively, but without waiver of the foregoing, the Defendants conduct created an intimidating, hostile or offensive work environment and/or had the purpose or effect of unreasonably interfering with Harris' work performance.

60.     Defendants knew or should have known of the harassment Harris suffered and failed to take prompt and effective remedial action.  Upon information and belief Harris' supervisors permitted the harassment to continue in the hopes that it would cause Harris to resign/retire.

61.     Defendants discriminatory and abusive actions created an atmosphere that was both subjectively hostile or abusive to Harris and severe and pervasive enough to create a work environment that a reasonable person would objectively find hostile or abusive.

62.     The actions, policies and practices complained of herein were in violation of Plaintiffs' rights secured by 29 U.S.C. § 621 *et seq.* and R.S.Mo. §213.010 *et seq.*

63.     As a direct and proximate result of the hostile work environment created by the Defendants as set forth herein, Harris has suffered and will continue to suffer emotional pain, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

64.     The conduct of the Defendants as set forth herein was wanton, willful, and showed a reckless indifference to Harris' federal statutory rights as set forth above, and therefore, an award of punitive damages is warranted and necessary to punish Defendants and to deter them and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff Harris prays this Court enter judgment in her favor and against the Defendants and thereafter:

A.      Enjoin Defendants' officers, agents, representatives and employees, or others acting in concert with them or under their direction and control from engaging in the policies and practices complained of herein, to wit, creating a hostile work environment.

B.      Award damages to Harris for her emotional injuries, including but not limited to emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation;

C.      Award Harris punitive damages against the Defendants in their individual capacities in such sum as this court believes will serve to punish them and to deter them and others from like conduct;

D.      Award Harris the costs of this action, together with her reasonable costs and attorneys' fees; and

E.      Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

## COUNT IV – WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY – WHISTLEBLOWING

Alternatively, and without waiver of the foregoing, for Count IV of her cause of action against Defendants City of St. Louis, 22nd Circuit, Devereaux, and Haskins, Plaintiff Harris states as follows:

65.      Harris incorporates by reference as if fully set forth herein paragraphs 1 through 31 of her complaint.

66.      Harris was an employee of the 22nd Circuit, who could only be terminated for criminal misconduct, moral turpitude, insubordination, unsatisfactory job performance, or other behavior of such severity or consequence as to no longer warrant employment.

67.      Harris entered into the performance of her duties as a Deputy Jury Supervisor for

the 22nd Circuit on or about September 28, 1988 and duly performed her duties under the terms and conditions of her employment until her termination on August 18, 2009.

68.     Prior to her termination, Harris reported to Devereaux that other employees of the Jury Supervisors Office were sleeping on duty, reading magazines, newspapers and other private reading material while on duty, and extensively using the computer for personal use while still being paid for performing their job duties, and therefore, were stealing public monies by deceit when they were paid although they were not working and/or they were failing to devote their time to the performance of their duties, requiring the forfeiture of their offices.

69.     Harris' whistleblower activity was a contributing factor in her discharge by Defendants.

70.     The activity of which Harris complained to her supervisor violated the public policy of the State of Missouri as set forth in § 570.030 R.S.Mo. in that employees of the Jury Supervisors Office were paid to work when they were not working constituting the taking of money (and in this case taxpayer money) by deceit and/or § 106.220 R.S.Mo., which provides for the removal of officials who fail to personally devote their time to the performance of their duties.

71.     Harris remains ready, willing and able to continue in her position as a Deputy Jury Supervisor for the 22nd Circuit and to perform all the duties of that position.

72.     As a direct and proximate result of her wrongful discharge, Harris has suffered and will continue to suffer economic injury to include lost wages and other benefits of her employment.

73.     As a direct and proximate result of her wrongful discharge, Harris has suffered and will continue to suffer emotional pain, mental anguish, inconvenience, humiliation,

embarrassment, loss of enjoyment of life, stress, and loss of reputation

74.     Defendants' conduct was outrageous because of their evil motive and reckless indifference to the rights of Harris in wrongfully terminating her employment in retaliation for reporting the misconduct of her co-workers that violated the public policy of the State of Missouri, and therefore, an award of punitive damages is warranted and necessary to punish Defendants and to deter them and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff prays this Court to enter judgment in her favor and against Defendants and thereafter:

A.     Order Defendants to make Plaintiff whole for any and all loses or damages she has suffered including lost wages and other benefits of employment;

B.     Award damages to Plaintiff for her emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation;

C.     Award Harris punitive damages against the Defendants in their individual capacities in such sum as this court believes will serve to punish them and to deter them and others from like conduct;

D.     Award Plaintiff the costs of this action, together with her reasonable attorneys' fees; and

E.     Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

Respectfully submitted,

**PLEBAN & PETRUSKA LAW, LLC**


By:        /s/ Lynette M. Petruska
            C. John Pleban, #4066
            Lynette M. Petruska, #15880
            2010 South Big Bend Blvd.
            St. Louis, MO  63117
            (314) 645-6666 - Telephone
            (314) 645-7376 - Facsimile

            Attorneys for Plaintiff