UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| AMALIA HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:10CV1392 RWS |
| | ) | |
| CITY OF ST. LOUIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Amalia Harris was employed as a Deputy Juror Supervisor in the Missouri Circuit Court's Twenty-Second Judicial Circuit in the City of St. Louis. Harris was terminated from her position. Harris has asserted several claims including employment discrimination and wrongful termination against numerous defendants. Defendant City of St. Louis has moved to dismiss the claims against it. Defendant Twenty-Second Judicial Circuit Court, along with the individually named defendants who are employees Circuit Court, (collectively the "Judicial Circuit defendants") have filed a motion for partial judgment on the pleadings. Because there are factual issues which will be the subject of discovery necessary to determine Harris' actual employer, I will deny the City of St. Louis' motion to dismiss. I will grant the Judicial Circuit defendants' motion for partial judgment on the pleadings as to the claims which fail as a matter of law.

*Legal Standard*

Rule 12(c) of the Federal Rules of Civil Procedure permits any party to move for judgment on the pleadings any time "[a]fter the pleadings are closed . . . ." Fed.R.Civ.P. 12(c). A motion for judgment on the pleadings is appropriate in situations where no material issue of

fact remains to be resolved and the movant is entitled to judgment as a matter of law. As a general rule, "a Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a 12(b)(6) motion to dismiss." Ginsburg v. InBev NV/SA, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010) (citation omitted). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). A claim has facial plausibility when the alleged facts allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. Only well-pleaded facts are accepted as true, while "[t]hreadbare recitals of the elements of a cause of action" and legal conclusions are not. Id. "[L]egal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations." Id. at 1950. When a complaint contains well-pleaded factual allegations, a court should determine whether they plausibly entitle the plaintiff to relief. Id. If the well-pleaded facts do not plausibly entitle the plaintiff to relief, the claim should be dismissed. Id.

Generally, the Court must ignore materials that are outside of the pleadings; however, the Court may "consider some public records, materials that do not contradict the complaint, or materials that are 'necessarily embraced by the pleadings.'" Noble Sys. Corp. v. Alorica Cent., LLC, 543 F.3d 978, 982 (8th Cir. 2008) (quoting Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)); see also 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1357, at 376 (2004) (opining that a trial court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the

complaint"). "The district court may take judicial notice of public records and may thus consider them on a motion to dismiss." Stahl v. U.S. Dept. of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003) (citing Faibisch v. Univ. of Minn., 304 F.3d 797, 802-03 (8th Cir. 2002)).

*Background*

In her complaint, Plaintiff Amalia Harris alleges that she started her employment with Defendant City of St. Louis and Defendant Twenty-Second Judicial Circuit as a deputy juror supervisor on October 1, 1988. Harris received satisfactory performance reviews from her immediate supervisor, Defendant Michael Devereaux, until 2006.

On February 28, 2006, Harris was assaulted by one of her coworkers, Defendant Viola Nance. This assault resulted in a shoulder injury. Defendant Devereaux refused or failed to call the police, investigate the assault, or file a workers' compensation claim.
On March 27, 2006, Devereaux transferred Harris to a new position, which Harris alleges was a demotion. Harris alleges that she was thereafter subjected to a pattern of harassment, derision, and discrimination by her coworkers, Defendants Nance, Paulette Hellon, ClaudetteWilliams, Linda Deschler, and Connie Carson. The harassment included coworkers calling her "stupid"; coworkers yelling and directing profanity at her; coworkers refusing to assist her with her duties; coworkers making false complaints against her to Devereaux; and Nance intentionally knocking items off her desk. Harris also alleges that Devereaux subjected her to a hostile work environment by: calling Harris into his office; requiring Harris to carry items too heavy for her because of her shoulder injury; making comments that Harris should retire; negatively evaluating Harris; docking Harris' time for doctors' visits when other employees were not so docked; and giving Harris a time limit to go to City Hall when such a condition was not imposed on other

employees.

After the February 28, 2006, assault, Devereaux began to report Harris' job performance as unsatisfactory for the first time since she began working for the Twenty-Second Judicial Circuit. Specifically, the 2005-2006 evaluation (issued after February 28, 2006), the 2006-2007 evaluation, and the 2007-2008 evaluation all were critical of Harris' job performance. Harris also alleges that Defendants began secretly to document her alleged deficiencies without telling her of these deficiencies, thereby preventing the opportunity for her to improve her performance. Harris alleges that this failure to apprise her of her deficiencies violated the policies and procedures of the Office of the Jury Supervisor.

Harris reported to Devereaux that coworkers were sleeping, reading private reading materials, and using the computer for personal use when they should have been working. Harris was also aware that Nance used her position to cause the removal of her husband from the list of qualified jurors so that he would not have to serve jury duty like other qualified residents of the City of St. Louis. On August 18, 2009, Harris' employment was terminated.

In her complaint, Harris asserts age-discrimination claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.010 et seq., for wrongful discharge, retaliation, and hostile work environment. In addition, Harris asserts a state law whistler-blower claim for wrongful discharge in violation of public policy for reporting to Devereaux that other employees were sleeping, reading private reading materials, and using the computer for personal use while on duty. That is, Harris alleges that the activity about which she complained violated Mo. Rev. Stat.

§ 570.030,[1] in that the employees of the Office of the Jury Supervisor were paid when they were not working which constituted a taking of money by deceit, and Mo. Rev. Stat. § 106.220,[2] which provides for the removal of officials who fail personally to devote their time to the performance of their duties.

*Analysis*

*Judicial Circuit Defendants*

In support of their motion for partial judgment on the pleadings, the Judicial Circuit defendants argue that Harris' MHRA claims fail because she is over 70 years of age, and therefore is not a member of a class protected under the MHRA. Moreover, these defendants argue that Harris' whistle-blower claim fails because the allegations of wrongdoing that she reported to her supervisor do not constitute serious misconduct in violation of the law or well established and clearly mandated public policy.

Harris opposes these defendants' motion. She does not dispute that Missouri law defines the protected class for age discrimination as persons with an age of 40 but less than 70, or that she alleges only discrimination that occurred after she no longer fell within the statute's defined protected class. However, Harris argues that to the extent the MHRA permits age discrimination against those over the age of 70, it violates the Equal Protection Clause of the 14th Amendment

---

[1] "A person commits the crime of stealing if he or she appropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion." Mo. Rev. Stat. § 570.030.1.

[2] "Any person elected or appointed to any county, city, town or township office in this state, except such officers as may be subject to removal by impeachment, who shall fail personally to devote his time to the performance of the duties of such office, or who shall be guilty of any willful or fraudulent violation or neglect of any official duty, or who shall knowingly or willfully fail or refuse to do or perform any official act or duty which by law it is his duty to do or perform with respect to the execution or enforcement of the criminal laws of the state, shall thereby forfeit his office, and may be removed therefrom. . . ." Mo. Rev. Stat. § 106.220.

−5−

of the United States Constitution. Furthermore, she argues that the MHRA conflicts with the ADEA, which does not have an upper age limit, and therefore violates the Supremacy Clause of the United States Constitution.

The MHRA prohibits any employer from discriminating against an individual, because of, among other reasons, such an individual's age. Mo. Rev. Stat. § 213.055.1(1). Pursuant to the MHRA, the term "age" means "an age of forty or more years but less than seventy years." Mo. Rev. Stat. § 213.010(1). "The MHRA protects persons aged 40 to 70 from age discrimination." Daugherty v. City of Maryland Heights, 231 S.W.3d 814, 820 n.8 (Mo. 2007) (en banc). The elements of a MHRA wrongful-discharge claim are: the defendant discharged the plaintiff; one or more of the protected classifications supported by the evidence was a contributing factor in such discharge; and as a direct result of such conduct, plaintiff sustained damage. MAI 31.24 (6th ed. supp. 2007). Similarly, "[r]etaliation for opposing discrimination or for filing a complaint constitutes discrimination under the MHRA and, like other forms of discrimination, is proved by showing the elements required by the MHRA . . . ." Hill v. Ford Motor Co., 277 S.W.3d 659, 665 (Mo. 2009) (en banc).

Because Harris alleges that she was over the age of 70 at the time of the adverse employment actions, she fails to allege that her membership in a MHRA-protected class was a contributing factor to such adverse employment actions, a necessary element of her MHRA claims. Nevertheless, Harris argues that the MHRA is unconstitutional to the extent it permits age discrimination against those over the age of 70.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is

essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (quotation omitted). Unless the classification is based on a suspect or quasi-suspect class, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." Id. at 440 (citation omitted). This is true "even if the law seems unwise or works to the disadvantages of a particular group, or if the rationale for it seems tenuous." Romer v. Evans, 517 U.S. 620, 632 (1996) (citation omitted). The Supreme Court "has said repeatedly that age is not a suspect classification under the Equal Protection Clause." Gregory v. Ashcroft, 501 U.S. 452, 470 (1991) (citations omitted). Accordingly, the Court will analyze the challenge to the Missouri law under a rational basis review. [3]

"The State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." City of Cleburne, 473 U.S. at 446. A classification based on an irrational prejudice or animosity will not survive rational basis review. Id. at 450 (finding state action was based on an irrational prejudice against the mentally challenged); Romer, 517 U.S. at 634 (finding the disadvantage imposed by state action was born of animosity towards homosexuals). "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." F.C.C. v. Beach Commc'ns., Inc., 508 U.S. 307, 313 (1993) citations omitted). Under a rational basis

---

[3] The Court notes that plaintiff agrees that a state may not discriminate on the basis of age if the age classification is not "rationally related" to a legitimate state interest. Doc. #29, p. 2.

review, "the plaintiff bears the burden of proof, and the statute bears a strong presumption of validity." Mills v. City of Grand Forks, 614 F.3d 495, 500 (8th Cir. 2010) (citation omitted).

In this case, Harris has not met her burden of showing there is no reasonably conceivable state of facts that could provide a basis for the MHRA's classification. Further, in upholding a Missouri law that requires the mandatory retirement of state judges at the age of 70, the Supreme Court recognized that an unfortunate fact of life is the diminution of physical and cognitive ability with age. Gregory, 501 U.S. at 472. In this case, Missouri's classification based on age does not proceed among suspect lines, and further is not based on irrational prejudice or animosity. Rather, in light of the Supreme Court's decision in Gregory, and considering the strong presumption of validity that the Missouri statute bears, I find that the MHRA does not violate the 14th Amendment of the United States Constitution.

Additionally, the MHRA upper-age limit does not implicate the Supremacy Clause. "Pursuant to the Supremacy Clause of the Constitution, federal law trumps state law where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Contemporary Indus. Corp. v. Frost, 564 F.3d 981, 988 (8th Cir. 2009) (quotation omitted). In this case, because Harris may still maintain her ADEA claim, the MHRA does not stand as an obstacle to the execution of the purposes and objectives of the ADEA. Accordingly, I will grant the Judicial Circuit defendants' motion for judgment on the pleadings with regard to Harris' MHRA claims.

Harris' whistle-blower claim also fails. Under Missouri law an at-will employee may not be terminated for refusing to perform an illegal act or reporting wrongdoing or violations of law to superiors or third parties. Margiotta v. Christian Hosp. Northeast Northwest, 315 S.W.3d 342,

346 (Mo. 2010) (en banc). Such wrongful-discharge claims are "very narrowly drawn," and require that a plaintiff allege that she "reported to superiors or to public authorities serious misconduct that constitutes a violation of the law and of . . . <u>well established and clearly mandated</u> public policy." <u>Id.</u> at 346-47 (quotation omitted); <u>see also</u> <u>Olinger v. Gen. Heating & Cooling Co.</u>, 896 S.W.2d 43, 47 (Mo. App. 1994) (finding that whistle-blower claim requires showing that defendant discharged plaintiff because "she reported to public authorities serious misconduct that constitutes a violation of law").

> [A] wrongful discharge action must be based on a constitutional provision, a statute, a regulation based on a statute or a rule promulgated by a governmental body. Absent such explicit authority, the wrongful discharge action fails as a matter of law. Moreover, not every statute or regulation gives rise to an at-will wrongful termination action. A vague or general statute, regulation, or rule cannot be successfully pled under the at-will wrongful termination theory, because it would force the court to decide on its own what public policy requires.

<u>Margiotta</u>, 315 S.W.3d at 346 (internal citations omitted). The pertinent inquiry "is whether the authority clearly prohibits the conduct at issue in the action." <u>Id.</u> at 347.

In this case, I find that the behavior Harris reported to her supervisor does not qualify as <u>serious</u> misconduct that constitutes a violation of the law or of well established and clearly mandated public policy. Rather, the severity of the infractions she alleges rises only to the level of routine office management decisions and does not implicate a wrongful-discharge claim. Further, the statutes upon which Harris relies, which generally prohibit stealing and the ouster of public officials for failure personally to devote their time to the performance of their duties, do not specifically or clearly proscribe the incidents Harris reported to her supervisor. Accordingly, I find that Harris' whistle-blower claim fails as a matter of law.

*Defendant City of St. Louis*[4]

Defendant City of St. Louis states that Harris inaccurately alleges that she was employed and paid by the City of St. Louis *through* Defendant Twenty-Second Judicial Circuit. The City of St. Louis argues that Harris is not its employee and she therefore fails to state a cause of action against it. Harris asserts that she is an employee of the City of St. Louis for purposes of this action. Harris also asserts that she should be allowed to conduct discovery to test her claim that the City of St. Louis is her employer.

For a defendant to be liable under the ADEA, "'there must be an employment relationship between the plaintiff and the defendant.'" Palmer v. Ark. Council on Econ. Educ., 154 F.3d 892, 895 (8th Cir. 1998) (quoting Deal v. State Farm Cnty. Mut. Ins. Co., 5 F.3d 117, 118 n.2 (5th Cir. 1993)). The ADEA defines an employer as "a person engaged in an industry affecting commerce who has twenty or more employees . . . ." 29 U.S.C. § 630(b). An "employer" also includes, "(1) any agent of such a person, and (2) a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State." 29 U.S.C. § 630(b). To show that a defendant institution is an agency of a state or political subdivision of a state for ADEA purposes, a plaintiff must show that the state or political subdivision had some supervisory control over the plaintiff. Palmer, 154 F.3d at 896 (citing Schaefer v. Transp. Media, Inc., 859 F.2d 1252, 1255 (7th Cir. 1988)). A plaintiff may demonstrate such control by showing that:

> [T]he terms of employment such as pay, hours, and benefits are fixed

---

[4] Defendant City of St. Louis does not argue that Harris' MHRA and whistle-blower claims fail for the reasons asserted by the Judicial Circuit defendants. Nevertheless, for the reasons stated above, I find that with regard to such claims judgment on the pleadings should be granted as to defendant City of St. Louis.

> by the [state or political subdivision] rather than the [defendant
> institution]. Other facts . . . would be the source of funds for salaries
> and wages, whether the employees of the two parties have a common
> pension fund, and whether the employees are subject to a common
> civil service employment and grievance policy.

Id. (quoting Rogero v. Noone, 704 F.2d 518, 522 (11th Cir. 1983)); see also Deal, 5 F.3d at 118-19 (applying "hybrid economic realities/common law control test," for which the right to control an employee's conduct is the most important component, but also considering whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment).

In this case, the City of St. Louis argues that the right to control is the most important consideration. It also asserts that the powers to control and supervise Harris belonged to Defendant Twenty-Second Judicial Circuit. The City of St. Louis asserts that its provision of funds for Harris' salary has absolutely nothing to do with the factual allegations of liability and does not alone establish an employer / employee relationship. I recognize that the case law states that the right to control is an important consideration. Nevertheless, it is not the only consideration, and I agree with Harris that, in this case, the decision of whether the City of St. Louis is Harris' employer should not be made without the benefit of discovery on the issue. As a result, the City of St. Louis' motion for judgment on the pleadings will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Twenty-Second Judicial Circuit, Michael D. Devereaux, Helen Haskins, Viola Nance, Paulette Hellon, Claudette Williams, Linda Deschler, and Connie Carson's motion for partial judgment on the pleadings [Doc. #18] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant City of St. Louis' motion for judgment on the pleadings [Doc. #23] is **DENIED**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 18th day of May, 2011.